UNITED STATES DISTRICT COURT
for the
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY HOVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. _____ |
| COUNTY OF LEBANON, | ) |
| | ) FILED ELECTRONICALLY |
| THOMAS S. LONG, | ) |
| In His Personal and Official Capacity, | ) JURY TRIAL DEMANDED |
| | ) |
| TPR. GARY CAREIRO | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. K. REITZ, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. M. DUNCAN, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. M. BIVENS, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. C. FORCEY, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. J. YODER, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. A. HAUN, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. J. DOUNDOUK, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR.C. ASHEY, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| TPR. DOE 1-2, | ) |
| In His Personal and Official Capacity, | ) |
| | ) |
| DR. SAMIR QASIM, | ) |

|   |   |
|---|---|
| In His Personal and Official Capacity, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

# COMPLAINT

Plaintiff Gregory Hovis, by and through undersigned counsel, hereby files the following Complaint.

# PARTIES

1. Plaintiff was, at all times relevant to the actions brought herein, an adult resident of Adams County, Pennsylvania.

2. Defendant County of Lebanon is an entity organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains a central office and/or principal place of business at 400 South 8th Street, Lebanon, PA 17042.

3. Defendant the County of Lebanon is a political subdivision of the Commonwealth of Pennsylvania and at all times relevant hereto acted under the color of state law, and was at all material times responsible for the hiring, training, supervision, and discipline of Defendant Thomas S. Long and for contracting with Dr. Samir Qasim via WellSpan Philhaven.

4. Defendant Thomas S. Long is a Pennsylvania-licensed attorney and, at all times relevant herein, was the solicitor for Defendant County of Lebanon. He is sued in his personal and official capacity.

5. Defendant Tpr. Gary Careiro is a United States citizen. At all times relevant to this Complaint, Defendant Careiro was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

6. Defendant Tpr. K. Reitz is a United States citizen. At all times relevant to this Complaint, Defendant Reitz was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

7. Defendant Tpr. M. Duncan is a United States citizen. At all times relevant to this Complaint, Defendant Duncan was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and

customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

8. Defendant Tpr. M. Bivens is a United States citizen. At all times relevant to this Complaint, Defendant Bivens was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

9. Defendant Tpr. C. Forcey is a United States citizen. At all times relevant to this Complaint, Defendant Forcey was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

10. Defendant Tpr. J. Yoder is a United States citizen. At all times relevant to this Complaint, Defendant Yoder was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

11. Defendant Tpr. A. Haun is a United States citizen. At all times relevant to this Complaint, Defendant Haun was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

12. Defendant Tpr. J. Dounouk is a United States citizen. At all times relevant to this Complaint, Defendant Dounouk was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

13. Defendant Tpr. C. Ashey is a United States citizen. At all times relevant to this Complaint, Defendant Ashey was a law enforcement officer employed by the Pennsylvania State Police at its Gettysburg station, located at 1750 Granite Station Road, Gettysburg, PA 17325, purporting to act within the full scope of his authority and office, and under color of state law and pursuant to the statutes, ordinances, regulations and customs, and usages of the Pennsylvania State Police. He is sued in his personal and official capacity.

14. Collectively, Defendants Ashey, Dounouk, Haun, Yoder, Forcey, Bivens, Carneiro, Duncan, and Reitz are collectively referred to as "PSP Troopers" throughout this Complaint.

15. On information and belief, there are additional Policy-making Defendants who are responsible for Plaintiff's injuries suffered as a result of the inherently dangerous circumstance presented by the behaviors at issue, and such parties shall be referred to as the "Tpr. Doe 1-23 Defendants" herein. Plaintiff will amend his Complaint to state these individuals' true identities once such information becomes available.  These defendants are being sued in both their individual and official capacity.

16. Tpr. Doe Defendants 1-2 are collectively referred to as "PSP Command" throughout this Complaint.

17. Defendant Samir Qasim is a licensed physician and, at all times relevant herein, was the doctor charged with evaluating and signing a verified charge against Plaintiff for Defendant County of Lebanon.  He is sued in his personal and official capacity. Defendant Qasim acted under color of state law for all averred actions in this Complaint.

18. Plaintiff brings this action to redress grievances and in vindication of civil rights guaranteed to the Plaintiff under the Constitution of the United States and the laws enacted in furtherance thereof, including 42 U.S.C. §1983.

## JURISDICTION

19. This is an action for monetary relief for violation of the Fourth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and 42 U.S.C. §1986.

20. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343(a)(3) as well as 28 U.S.C. §1367.

## VENUE

21. This Court is the appropriate venue pursuant to 28 USC § 1391(b) because the events and omissions giving rise to the claims occurred in the Middle District of Pennsylvania (Adams and Lebanon Counties). Plaintiff resided in this judicial district at all times relevant to this Complaint, the Defendants reside and conduct business in this judicial district, and the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## FACTS

22. At all times relevant herein, Gregory Hovis resided in Adams County, Pennsylvania.

23. On March 1, 2022, Plaintiff was at his home with his wife Michelle conversing in hopes of reconciling their marriage.

24. On information and belief, rather than actually attempting to reconcile the marriage, Plaintiff's wife and her brother had concocted a plan whereby she would send a text message to him and he would alert police to a "dangerous situation" in hopes that they would arrive and either arrest or kill Plaintiff.

25. As planned, Plaintiff's wife sent the text message and, directly or indirectly, Wife's brother made a false report of threat at Plaintiff's home.

26. Troopers Reitz, Duncan, Carneiro, Bivens, Forcey, Yoder, Haun, Doundouk, and Ashey ("PSP Troopers") were dispatched to Plaintiff's home.

27. PSP Troopers encountered Plaintiff's wife safely outside the home and later observed Plaintiff exit the front door of his home without incident.

28. Plaintiff was lawfully carrying a handgun in his back pocket at the time of first contact with PSP Troopers.

29. Plaintiff made no furtive movements or gave any indication he intended to harm (or had harmed) himself or anyone else.

30. PSP Troopers gave commands to Plaintiff and, as best he could understand, physically complied.

31. Despite this peaceful interaction and no evidence of intent to harm anyone or anything, PSP Troopers physically assaulted Plaintiff, took him to the ground, handcuffed him, and secured him in the back of a State Police patrol vehicle.

32. Plaintiff was unable to move his hands due to restraints and was not free to exit the vehicle.

33. Plaintiff became distraught by the interaction and subsequent arrest.

34. Subsequent to his detention, PSP Troopers searched Plaintiff and seized his personal property including his handgun.

35. Plaintiff was then transported to Gettysburg Hospital, against his will, for initial evaluation and then taken to WellSpan Philhaven Hospital where he was involuntarily committed under §302 of the Mental Health Procedures Act of Pennsylvania.

36. On March 4, 2022, Plaintiff was subjected to a civil commitment hearing heard by a Hearing Officer.

37. During the hearing, Thomas S. Long, the Solicitor for Lebanon County (where WellSpan Philhaven is located) prosecuted the civil commitment action against Plaintiff.

38. During the hearing, Defendant Long relied on (a) hearsay testimony by Trooper Careiro which was inconsistent with video evidence possessed by Pennsylvania State Police and,

on information and belief, Long and Lebanon County, and (b) testimony by Samir Qasim who, despite admitting Plaintiff did not presently pose a threat to himself or others, forcefully advocated for continued detention of Plaintiff through extended involuntary commitment pursuant to §303 of the Mental Health Procedures Act of Pennsylvania..

39. The Hearing Officer found in favor of Lebanon County despite complete lack of evidence that Plaintiff should be involuntarily committed.

40. Subsequently, after the filing of a timely petition for review by the Court, Plaintiff was "released" by the Court of Common Pleas without the presentation of any evidence (testimonial or otherwise) because Plaintiff had finally been released once the Petition was filed and served on Defendants Long and Lebanon County.

41. During the hearing in the Court of Common Pleas, Judge Samuel A. Kline admitted on the record that he had had *ex parte* communication with Defendant Long to discuss the procedure by which Plaintiff's Petition would be handled in the Court. This occurred despite Plaintiff having counsel of record at the time and no attempt to involve or include Plaintiff's counsel was made by Defendant Long or Judge Kline.

42. Gregory Hovis seeks all remedies and damages permitted by law.

## COUNTS

### COUNT I

**42 U.S.C. §1983 Claim (Unlawful Search and Seizure)**

**Plaintiff v. Defendants PSP Troopers**

43. The preceding paragraphs are incorporated by reference.

44. Plaintiff claims damages under 42 U.S.C. §1983 against Defendants collectively referred to as PSP Troopers for violations of Plaintiff's constitutional rights under color of law.

45. At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from unlawful searches and/or seizures.

46. Plaintiff's constitutionally protected right to be free from an unlawful search and seizure was violated when Defendants PSP Troopers searched Plaintiff without his consent, a valid warrant or probable cause and when Defendants PSP Troopers seized Plaintiff's personal property without his consent, a valid warrant, or probable cause to do so.

47. The actions of PSP Troopers were willful, wanton, and/or done with a reckless disregard for the rights of the Plaintiff, thereby subjecting PSP Troopers to punitive damages.

48. As a direct and proximate result of the acts mentioned hereinbefore above perpetrated by Defendants PSP Troopers, Plaintiff suffered the following injuries and damages:

    a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated.

    b. Physical pain and suffering;

    c. Fright, horror and shock;

    d. Emotional trauma and suffering; and

    e. Economic damages related to any and all consequential costs.

49. Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

**COUNT II**

## 42 U.S.C. §1983 Claim (False Arrest)

## Plaintiff v. Defendants PSP Troopers

50. The preceding paragraphs are incorporated by reference.

51. Plaintiff claims damages under 42 U.S.C. §1983 against Defendants collectively referred to as PSP Troopers for violations of Plaintiff's constitutional rights under color of law.

52. At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Plaintiff had the right to be free from the unreasonable seizure of his person and detention and arrest without probable cause.

53. The unreasonable seizure of Plaintiff's person by Defendants PSP Troopers and his subsequent false arrest and detention constituted an unreasonable deprivation of the Plaintiff's liberty in violation of the Fourth Amendment to the Constitution of the United States, and at all times was done without probable cause to believe that Plaintiff had committed any act which would justify his arrest.

54. Defendants PSP Troopers arrested the Plaintiff without the requisite probable cause to do so.

55. The conduct of PSP Troopers deprived the Plaintiff of his right to be free from unreasonable and unlawful detention and arrest.

56. Pursuant to 42 U.S.C. §1983 and the Fourth Amended to the United States Constitution, Defendants PSP Troopers had a duty and/or was required to avoid the use of unlawful detention and arrest against the Plaintiff, which duty was deliberatrely violated by Defendants PSP Troopers, who arrested the Plaintiff without probable cause.

57. The actions of PSP Troopers were willful, wanton, and/or done with a reckless disregard for the rights of the Plaintiff, thereby subjecting PSP Troopers to punitive damages.

58. As a direct and proximate result of the acts mentioned hereinbefore above perpetrated by Defendants PSP Troopers, Plaintiff suffered the following injuries and damages:

    1. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated.
    2. Physical pain and suffering;
    3. Fright, horror and shock;
    4. Emotional trauma and suffering; and
    5. Economic damages related to any and all consequential costs.

59. Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT III

### 42 U.S.C. §1983 Claim (Abuse of Process)

### Plaintiff v. Defendant Thomas S. Long

60. The preceding paragraphs are incorporated by reference.

61. Defendant Long knew and understood that unwarranted involuntary commitment of Gregory Hovis would significantly impact financially, emotionally, and physically.

62. Defendant Long undertook the prosecution of civil commitment against Gregory Hovis in order to, on information and belief, validate the wrongful actions of PSP Troopers and preclude Gregory Hovis from gun ownership.

63. In fact, even once he began the prosecution it quickly became clear that his case was fatally flawed, and yet, he persisted with prosecuting the civil commitment action against

Gregory Hovis despite knowing that there was no proper purpose for continued litigation in light of the fatal inconsistencies in the testimony of Defendant Samir Qasim and Defendant Gary Careiro which, even taken in the light most favorable to them, did not warrant involuntary commitment.

64. Thus, the litigation, especially with the overzealous attempt by Defendant Long in the course of the prosecuting the case for involuntary commitment, was pursued for an improper purpose.

65. Gregory Hovis was emotionally and financially harmed by having to go through the needless litigation and endure wrongful civil commitment.

66. This harm came as the direct and proximate result of Defendant Long's improper continuation, overzealous prosecution of the civil commitment case, and abuse of process.

67. Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT IV

## 42 U.S.C. §1983 Claim (Violation of the 14th Amendment – Monell Liability - Condonation)

### Plaintiff v. Defendant Lebanon County

68. The preceding paragraphs are incorporated by reference.

69. Defendant Lebanon County had actual knowledge of the risks posed by Defendant Thomas S. Long at and in advance of the detention of Plaintiff which was previously described.

70. Insufficient or non-existent discipline has perpetuated a culture of acceptance and condonation of unconstitutional behavior while dealing with those sent to WellSpan Philhaven under involuntary civil commitment.

71. Defendant Lebanon County had actual or constructive knowledge of the conduct of Defendant Long, especially in light of their retention of him as Defendant Lebanon County's solicitor.

72. Defendant Lebanon County was deliberately indifferent to the rights of those affected and, as such, failed to correct the behaviors of their solicitor Defendant Long.

73. The custom of the solicitor of Defendant Lebanon County behaving in a manner which is indifferent to the safety of those they are sworn to protect and their misuse of civil commitment proceedings is the direct and proximate cause of injury to Gregory Hovis.

74. Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT V

### 42 U.S.C. §1983 Claim (Failure to Supervise)

### Plaintiff v. PSP Command

75. The preceding paragraphs are incorporated by reference.

76. On information and belief, the radio system used by PSP Troopers is capable of being monitored by PSP Command.

77. PSP Command failed to supervise the actions of PSP Troopers in this incident.

78. PSP Command, on information and belief, knew that PSP Troopers would violate the rights of Plaintiff in light of lack of training and knowledge at the time the incident occurred in which Plaintiff was injured as previously averred.

79. Rather than take basic supervisory steps, such as auditing radio transmissions, spot-checking PSP Troopers' conduct in the field, sending PSP Troopers for additional training and performance improvement and other such tasks demonstrates a deliberate indifference on the part of PSP Command to the constitutionally protected rights of individuals such as Gregory Hovis.

80. These failures by PSP Command are the actual and proximate cause of injury and harms sustained by Gregory Hovis.

81. Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT VI

### 42 U.S.C. §1983 Claim (Failure to Train)

### Plaintiff v. PSP Command

82. The preceding paragraphs are incorporated by reference.

83. PSP Command failed to properly train troopers such as PSP Troopers in proper procedures and techniques for dealing with domestic situations similar to the instant case.

84. Improper or nonexistent training in these areas by PSP Command is the direct and proximate cause of the injuries to Gregory Hovis

85. The failure of PSP Command to properly train their troopers in proper procedure in determining whether or not to take someone such as Gregory Hovis into ccustody is an established practice so permanent and well settled as to constitute a custom or usage with the force of law within the Pennsylvania State Police – Gettysburg barracks.

86. Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT VII

### 42 U.S.C. §1985 Claim (Conspiracy)

**Plaintiff v. PSP Troopers, Thomas A. Long, and Samir Qasim**

87. The preceding paragraphs are incorporated by reference.

88. PSP Troopers, Thomas A. Long, and Samir Qasim are hereinafter referred to collectively as "Conspirators."

89. PSP Troopers, Thomas A. Long, and Samir Qasim comprise a combination of two or more individuals acting with a common purpose, namely to violate the due

process rights of Plaintiff through the pursuit of mental health commitment and detention against Plaintiff while lacking probable cause.

90. PSP Troopers took affirmative steps to further the conspiracy by detaining, restricting the movement of, transporting, writing affidavits, and testifying against Plaintiff.

91. Thomas A. Long took affirmative steps to further the conspiracy by communicating *ex parte* with state court judiciary during the pendency of the civil commitment proceeding (and about the civil commitment proceeding), suborning testimony knowingly lacking in substantive merit, and prosecuting the civil commitment action against Plaintiff while having no probable cause to do so.

92. Samir Qasim took affirmative steps to further the conspiracy by completing and signing Mental Health Petition for 303 commitment while lacking a proper factual foundation, information, or belief upon which he could assert the claims prosecuted.

93. On information and belief, there was agreement by PSP Troopers, Samir Qasim, and Thomas A. Long to pursue the wrongful commitment and detention of Plaintiff all while either knowing the matters complained of were false or failing to adequately investigate the matters and thus lacked a proper factual foundation, information, or belief upon which they could assert the claims prosecuted.

94. In their rush to pursue claims against Plaintiff while lacking a proper factual foundation, information, or belief upon which they could assert the claims prosecuted, Conspirators acted with intent to deny equal privileges and

immunities (namely the right to have claims brought against them only when probable cause existed) of Plaintiff.

95. As a result, Plaintiff has endured actual legal injury; specifically, he has endured damage to reputation, legal expenses, and psychological injury as well as shame and embarrassment.

96. Plaintiff Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT VIII

### 42 U.S.C. §1986 Claim (Failure to Prevent Violations)

### Plaintiff v. PSP Command

97. The preceding paragraphs are incorporated by reference.

98. PSP Command, while acting in their official capacity, failed to adequately supervise or control the actions including wrongful detention of Plaintiff by PSP Troopers.

99. PSP Command, on information and belief, knew of the process followed by PSP Troopers in this matter and were aware of the conspiracy which existed in this matter.

100. There existed a conspiracy to deprive Plaintiff of his substantive due process rights as defined by 42 U.S.C. §1985. Specifically, PSP Troopers acted in concert with Thomas A. Long and Samir Qasim who, in their eagerness to obtain a "302" and subsequent "303" detention of Plaintiff, violated the due process

rights guaranteed to Plaintiff and subsequently a denial of those due process rights occurred.

101. PSP Command neglected or failed to intercede to stop the conspiracy averred above.

102. In fact, PSP Command, on information and belief, affirmatively approved the actions taken by PSP Troopers in this matter.

103. PSP Command had the ability to stop the actions of PSP Troopers.

104. Thus, PSP Command is liable for their failure to act to stop the violations of Plaintiff's civil rights.

105. Plaintiff Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## COUNT IX

### AIDING AND ABETTING

### Plaintiff v. Samir Qasim

106. The preceding paragraphs are incorporated by reference.

107. At all times herein, Defendant Qasim had a common design with Defendant Long, namely to keep Plaintiff involuntarily committed, despite a lack of probable cause to do so.

108. At all times herein, Defendant Qasim knew that the conduct of Defendant Long had a duty to pursue only claims for involuntary commitment where the individual posed a threat to himself or others. However, Defendant Qasim, despite knowing that Plaintiff did not pose a threat to himself or others, testified

to the contrary and signed forms to that effect outside of court which gave substantial assistance to Defendant Long in violating the rights of Plaintiff.

109. As a licensed physician charged by the County of Lebanon with evaluating and developing treatment plans for Plaintiff, Defendant Qasim had a duty to Plaintiff to do so properly and breached that duty to Plaintiff when recommending commitment despite the requisite conditions.

110. These actions by Defendant Qasim represent aiding and abetting.

111. Plaintiff Gregory Hovis seeks all remedies and damages permitted under law including but not limited to, nominal damages, compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorneys fees.

## JURY DEMAND

A trial by jury is respectfully demanded for all claims so triable.

Dated: February 29, 2024     By:     /s/ Jason E. Piatt

Jason E. Piatt, Esq.
Counsel for the Plaintiff
PIATT LAW, PLLC
20 East Sixth Street, Suite 205
Waynesboro, PA 17268
PH: 717.655.5487