## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY HOVIS, | : | Civil No. 1:24-CV-355 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF LEBANON, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

Before the court are two motions to dismiss, one filed by Defendants

Thomas Long and County of Lebanon (collectively, "County Defendants") and one

filed by Dr. Samir Qasim ("Qasim"). (respectively, Docs. 20, 21.) Plaintiff's

motion for relief from summary judgment is also before the court. (Doc. 29.)

Plaintiff Gregory Hovis ("Hovis") alleges that the above-named Defendants and

several Pennsylvania State Trooper Defendants ("Trooper Defendants")[1] violated

his constitutional rights when he was arrested and involuntarily committed for

psychiatric treatment after an incident at his home. For the reasons that follow,

County Defendants' motion to dismiss will be granted in part and denied in part

and Dr. Qasim's motion to dismiss will be granted in part and denied in part.

Plaintiff's motion for relief from summary judgment will be denied as moot.

---

[1] The Trooper Defendants are Troopers Gary Carneiro, Kaleb Reitz, Matthew Duncan, Michael Bivens, Chad Forcey, Andrew Haun, Jared Doundouk, C. Ashey, and Corporal Joshua Yoder.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In his amended complaint, Hovis alleges that on March 1, 2022, Hovis was speaking with his wife in his home "in hopes of reconciling their marriage." (Doc. 19, ¶ 20.) This conversation, however, was not in good faith because "rather than actually attempting to reconcile the marriage, Plaintiff's wife and her brother had concocted a plan whereby she would send a text message to him [her brother] and he would alert the police to a 'dangerous situation' in hopes that they would arrive and either arrest or kill Plaintiff." (*Id.* ¶ 21.) Hovis' wife sent the message and Troopers were dispatched to the house. (*Id.* ¶¶ 22, 23.) Upon arrival, the Troopers found Hovis' wife already outside of the home and then observed Hovis leave his home "without incident." (*Id.* ¶ 24.) At this time, Hovis was "lawfully carrying a handgun in his back pocket[,]" and he "made no furtive movements or gave any indication he intended to harm (or had harmed) himself or anyone else." (*Id.* ¶¶ 25, 26.) The Troopers gave commands to Hovis, and he attempted to comply. (*Id.* ¶ 27.)

However, at this time, the Troopers "physically assaulted Plaintiff, took him to the ground, handcuffed him, and secured him in the back of a State Police patrol vehicle." (*Id.* ¶ 28.) Hovis' hands were restrained, and the Troopers searched his person and seized his handgun. (*Id.* ¶¶ 29, 31.) Hovis "became distraught by the interaction and subsequent arrest." (*Id.* ¶ 30.) Hovis was then "transported to

Gettysburg Hospital, against his will, for initial evaluation and then taken to

WellSpan Philhaven Hospital where he was involuntarily committed under § 302

of the Mental Health Procedures Act of Pennsylvania."[2]  (*Id.*¶ 32.)

After he had been transported to WellSpan Philhaven in Lebanon County,

Pennsylvania, Defendant Thomas S. Long ("Long"), Lebanon County Solicitor,

"investigated Plaintiff's mental [h]ealth."  (*Id.* ¶ 33.)  Allegedly, "Plaintiff did not

have an ongoing mental health issue and the video of the incident would have

demonstrated to Long that Plaintiff did not need to be committed."  (*Id*. ¶ 34.)  At

this time, "Long provided advice to Dr. Qasim[3] about extending the civil

commitment of Plaintiff and was involved in the petition documents signed by Dr.

Qasim in support of the § 303 extension."[4]  (*Id.* ¶ 37.)

---

[2] The Pennsylvania Mental Health Procedures Act ("MHPA") provides for involuntary
emergency examination and treatment for a period not to exceed 120 hours "upon the
certification of a physician stating the need for such examination; or upon a warrant issued by the
county administrator authorizing such examination; or without a warrant upon application by a
physician or other authorized person who has personally observed conduct showing the need for
such examination."  50 P.S. § 7302.  This procedure and section of the MHPA will be referred to
in this memorandum as "§ 302."

[3] Dr. Qasim is a licensed physician who is employed at WellSpan Philhaven and "was the doctor
charged with evaluating and signing a verified charge against Plaintiff for Defendant County of
Lebanon."  (Doc. 19, ¶ 14.)

[4] The MHPA provides that "[a]n application for extended involuntary emergency treatment may
be made for any person who is being treated pursuant to section 302 whenever the facility
determines that the need for emergency treatment is likely to extend beyond 120 hours."  50 P.S.
§ 7303.  This application is commonly known as a "§ 303" application or petition.  After a § 303
petition is filed, a person subject to the petition is entitled to the appointment of counsel and
review by a judge or mental health review officer.  *Id.* § 7303(c).  There is also a right to petition
the Pennsylvania Court of Common Pleas for review.  *Id.* § 73039g).  The extended involuntary
commitment shall end "[w]henever a person is no longer severely mentally disabled or in need of

Hovis had a hearing in front of a mental health review hearing officer on March 4, 2022. (*Id.*) At the hearing, Defendant Long represented Lebanon County and "prosecuted the civil commitment action against Plaintiff." (*Id.* ¶ 38.) In the course of presenting the County's case:

> Long relied on (a) hearsay testimony[5] by Trooper Careiro [sic] which was inconsistent with video evidence possessed by Pennsylvania State Police and, on information and belief, Long and Lebanon County, and (b) testimony by Samir Qasim who, despite admitting Plaintiff did not presently pose a threat to himself or others, forcefully advocated for continued detention of Plaintiff through extended involuntary commitment pursuant to §303 of the Mental Health Procedures Act of Pennsylvania.

(*Id.* ¶ 39.) The hearing officer found that further involuntary commitment was warranted "despite complete lack of evidence[.]" (*Id.* ¶ 40.) Hovis was "released" after an unknown amount of time following his filing a petition for review with the Court of Common Pleas. (*Id.* ¶ 42.)

Hovis filed his initial complaint in the instant case on February 29, 2024. (Doc. 1.) After limited discovery approved by the court, Hovis filed the operative amended complaint on June 24, 2024. (Doc. 19.) In the amended complaint, Hovis alleges one 42 U.S.C. § 1983 claim against Trooper Defendants for unlawful

---

immediate treatment" or after twenty days, unless the person is admitted to voluntary treatment, or a court extends the involuntary treatment pursuant to section 304. *Id.* § 7303(h).

[5] The court notes that, in a hearing pursuant to § 303, "[t]he judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable." 50 P.S. § 7303(c).

search and seizure under the Fourth Amendment and one § 1983 claim against Trooper Defendants for false arrest under the Fourth Amendment. (*Id.* ¶¶ 44–60.) Hovis alleges one § 1983 claim against Long based on his investigation of Hovis' mental health, advice to Dr. Qasim, and participation in preparing the § 303 petition. (*Id.* ¶¶ 61–66.) Hovis alleges a *Monell* claim against County of Lebanon for violating the Fourth and Fourteenth Amendment with respect to its procedures for involuntary commitments. (*Id.* ¶¶ 68–83.) Finally, Hovis alleges a § 1983 claim against Dr. Qasim for violating Fourteenth Amendment due process and one aiding and abetting claim relating to Dr. Qasim's participation in Long's conduct. (*Id.* ¶¶ 84–95.)

County Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted on July 3, 2024. (Doc. 20.) Dr. Qasim filed a motion to dismiss for failure to state a claim, or in the alternative, for summary judgment, on July 8, 2024. (Doc. 22.) Trooper Defendants answered the complaint on July 9, 2024. (Doc. 25.) On July 22, 2024, Hovis filed a motion for relief from Dr. Qasim's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). (Doc. 29.)[6] The motions have been fully briefed and are ripe for disposition.

---

[6] As explained more fully below, because the court is analyzing Dr. Qasim's motion under the motion to dismiss standard of review, the court will deny as moot the motion for relief from summary judgment.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343

because Hovis alleges violations of his constitutional rights under 42 U.S.C. §

1983.  Venue is appropriate pursuant to 28 U.S.C. § 1391 because all parties are

located within the Middle District of Pennsylvania and all events alleged in the

complaint occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**DISCUSSION**

The court will first address County Defendants' motion to dismiss and then turn to Dr. Qasim's motion to dismiss.

### A. County Defendants' Motion to Dismiss

County Defendants argue that Hovis' amended complaint should be dismissed because Defendant Long is entitled to absolute prosecutorial immunity, or in the alternative, qualified immunity because there is no clear constitutional violation. (Doc. 21, pp. 5–11.)[7] County Defendants also argue that the § 1983 claim against Defendant Long should be dismissed because it fails to plead a constitutional violation, a necessary to element of a § 1983 claim. (*Id.* at 11, 12.) County Defendants argue that Hovis fails to state a claim under §§ 1985 and 1986. (*Id.* at 12, 13.) Finally, County Defendants argue that Hovis has failed to state a *Monell* claim against the County because he, again, fails to plead a constitutional violation and fails to adequately plead an unconstitutional policy. (*Id.* at 14–16.)

Hovis responds that Defendant Long is not entitled to absolute immunity because Long's alleged misconduct involves investigative and administrative activity. (Doc. 27, p. 1–6.) Hovis also argues Long is not entitled to qualified

---

[7] For ease of reference, the court uses the page numbers contained in the CM/ECF header.

immunity because Long's conduct deprived Hovis of his Fourth and Fourteenth Amendment rights, and Long should have had "fair warning that his conduct violated Plaintiff's constitutional rights[]" because Long is an attorney. (*Id.* at 7–9.) Hovis concedes that he has not stated claims under §§ 1985 and 1986.[8]

In reply, County Defendants reiterate their arguments regarding absolute and qualified immunity and argue that Hovis may not amend the pleadings through further explanation in his brief in opposition. (Doc. 31, pp. 11, 12.) The court will address each argument in turn.

### 1. Absolute Immunity

In their brief in support, County Defendants argue that Hovis seeks to hold Defendant Long liable for his conduct during the § 303 hearing, which is intimately associated with the judicial phase of a civil commitment proceeding. (Doc. 21, pp. 8–10.) Hovis responds that the conduct at issue is not Long's conduct at the § 303 hearing, but rather his conduct beforehand, specifically the conduct alleged in ¶ 63 of the amended complaint. (Doc. 27, pp. 3, 4.) Hovis argues that the amended complaint alleges administrative and/or investigative

---

[8] The court notes that, in the jurisdictional statement in the amended complaint, Hovis alleges "This is an action for monetary relief for violation of the Fourth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C § 1983 and 42 U.S.C. § 1985, and 42 U.S.C. § 1986." However, there is no count against any Defendant alleging a violation of 42 U.S.C. §§ 1985 or 1986. Accordingly, confusion on County Defendants' part is understandable. Because Hovis concedes that he is not bringing claims under §§ 1985 or 1986, the court will not analyze the merits of this issue or dismiss the complaint on that basis.

misconduct by Long, such as investigating Hovis' mental health, that is not shielded by absolute prosecutorial immunity. (*Id.* at 5.)[9]  In reply, and with the theory of liability clarified, County Defendants contend that Long's behavior prior to the § 303 hearing is "unquestionably related to his role as advocate in Plaintiff's Section 303 proceedings." (Doc. 31, p. 6.)  County Defendants argue that the misconduct alleged "is analogous to a criminal prosecutor evaluating the evidence and determining whether there is sufficient evidence to bring criminal charges." (*Id.* at 7.)

Section 1983 "provides that every person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (cleaned up). However, the statute does not "abolish wholesale all common-law immunities[.]" *Burns v. Reed*, 500 U.S. 478, 484 (1991).  Instead, certain officials are entitled to "absolute protection from damages liability" as a result of the "special functions" they perform. *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020).  State prosecutors

---

[9] The court pauses here to note that Plaintiff's counsel chastises Defendants' counsel, arguing that "it is inscrutable why Defendant would argue that Plaintiff's theory of liability 'is premised exclusively on Defendant's [sic] Long's role in prosecuting Plaintiff's Section 303 involuntary commitment hearing." (Doc. 27, p. 4) (quoting Doc. 21, p. 8.)  The court disagrees that County Defendants' decision to make this argument is "inscrutable."  As discussed further below, Hovis's theory of liability against Defendant Long is unclear to the court, so it is understandable that Defendants' counsel would be similarly confused.

are one such category of officials due to their function within the judicial process. *See Imbler*, 424 U.S. at 430–31.[10]

However, "[a] prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (quoting *Light v. Haws*, 472 F.3d 74, 80–81 (3d Cir. 2007)). As a general rule, "[m]ost public officials[, such as prosecutors,] are entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)); *see also Burns*, 500 U.S. at 486–87 ("The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."); *Odd*, 538 F.3d at 207–08 ("In light of the Supreme Court's 'quite sparing' recognition of absolute immunity to § 1983 liability, we begin with the presumption that qualified rather than absolute immunity is appropriate.") (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999)). Prosecutors may nevertheless qualify for absolute immunity when he or she functions as the state's advocate when performing the action in question. *Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). This inquiry is concerned with "the nature of the function performed, not the identity of the actor who performed it." *Light*, 472 F.3d at 78.

---

[10] Hovis does not contest the assertion that Defendant Long is tantamount to a state prosecutor in a criminal proceeding for the purpose of immunity analysis. Therefore, the court will treat Defendant Long as a "prosecutor" for purposes of analyzing the absolute immunity issue.

The Supreme Court has explained that prosecutors are absolutely "immune from a civil suit for damages" for "activities [] intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31 (1976). In other words, a prosecutor enjoys absolute immunity for "all actions performed in a quasi-judicial role," such as "soliciting . . . testimony from witnesses in grand jury proceedings and probable cause hearings," "initiating a prosecution," "preparing for the initiation of judicial proceedings or for trial, conducting a trial, and presenting evidence to a judge." *Burns*, 500 U.S. at 479, 491–92; *Light*, 472 F.3d at 77; *Kulwicki v. Dawson*, 969 F.2d 1454, 1463, 1465 (3d Cir. 1992); *Imbler*, 424 U.S. at 431; *see also Fogle*, 957 F.3d at 159 ("Th[e] functional test separates advocacy from everything else[.]"). In contrast, absolute immunity does not apply "to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208. Indeed, the Court has explained that: "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (internal quotation marks and citations omitted).

The Court of Appeals for the Third Circuit has firmly rejected the notion that bright-line rules can be drawn regarding the prosecutor's role. *Fogle*, 957 F.3d at 160 ("[W]hile it is tempting to derive bright-line rules from [precedent], we have

11

cautioned against such categorical reasoning to preserve the fact-based nature of the inquiry."); *see also Odd*, 538 F.3d at 210 (rejecting "bright-line rules that would treat the timing of the prosecutor's action (e.g. pre-or post[-]indictment), or its location (i.e. in-or out-of-court), as dispositive"). Thus, the applicability of absolute immunity turns on the specific facts in the case. *Weimer v. County of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020). While courts "tend to discuss prosecutorial immunity based on alleged acts, our ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given claim." *Id.* (quoting *Fogle*, 957 F.3d at 161).

The first task before the court is to identify the challenged conduct which forms the basis of Hovis' claim. Hovis relies on paragraph 63 in the amended complaint as the basis of his claim against Defendant Long, which provides in full:

> On information and belief, Defendant Long investigated the mental health of Plaintiff prior to the establishment of any need for civil commitment and/or civil commitment hearings, provided legal advice to Dr. Qasim and the facility encouraging them to file a § 303 petition and participated in helping Dr. Qasim, a material witness and health care provider, and the facility execute the petition documents for the § 303 petition for an extended civil commitment against Gregory Hovis in order to validate and give apparent legitimacy to the wrongful actions of PSP Troopers in initiating the unlawful search and seizure of Plaintiff and his gun and to preclude Gregory Hovis from gun ownership.

(Doc. 19, ¶ 63.) This allegation raises three separate actions to be evaluated: 1) Long's investigation of Plaintiff's mental health "prior to the establishment of any need for civil commitment[,]" 2) providing legal advice to Dr. Qasim and the

facility regarding the filing of the § 303 petition, and 3) assisting Dr. Qasim and the facility in executing the § 303 petition.

Turning first to Long "investigating" Hovis' mental health "prior to the establishment of any need for civil commitment," the court finds that, on this record, County Defendants have not met their burden of showing that this conduct is entitled to absolute immunity. Although lacking in detail, it is alleged that Long participated in "investigative" activity prior to the initiation of the § 303 hearing. Without more detail as to the specific activities Long engaged in, the court cannot determine whether those actions are protected by absolute immunity. For example, the court must determine whether Long was "in the advocate's role . . . evaluating evidence and interviewing witnesses as he prepares for trial[,]" or in "the detective's role . . . searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested[.]" *Buckley*, 509 U.S. at 274. The plain assertion that Long was "investigating" Hovis' mental health after Hovis had been committed to the hospital under § 302 in insufficient to allow the court to reach an ultimate determination on this issue. County Defendants are free to raise this argument again after further development of the record.

Employing the same reasoning as above, the court also finds that it cannot determine whether Long giving advice to Dr. Qasim during the filing of the § 303 petition is protected by absolute immunity. The Supreme Court has made clear

that a prosecutor giving legal advice to a police officer during the investigative phase of a criminal case is not so "intimately associated with the judicial phase" so as to warrant absolute immunity. *Burns*, 500 U.S. at 493. However, a county solicitor giving advice to a physician completing a § 303 petition is sufficiently different than the paradigmatic example in *Burns*, and as absolute immunity analyses require a close attention to factual detail, the court declines to hold that giving advice to Dr. Qasim does or does not warrant absolute immunity. As above, this argument may be reconsidered after further development of the record. Thus, the court will deny the motion to dismiss without prejudice on the absolute immunity defense regarding both Long's investigation of Hovis' mental health and Long's advice to Dr. Qasim.

Finally, the court turns to whether the action of assisting Dr. Qasim in executing the § 303 petition is entitled to absolute immunity. This is sufficiently close to initiating a prosecution of a criminal defendant, which is afforded absolute immunity. *Imbler*, 424 U.S. at 431. Thus, Defendant Long is entitled to absolute immunity for actions regarding the preparation and filing of the § 303 petition. Therefore, the court will grant the motion to dismiss regarding Long's assistance in filing the § 303 petition. This action is immune from suit.

### 2. Qualified Immunity and Whether Hovis Alleged a Constitutional Violation

The court turns next to whether Defendant Long is entitled to qualified immunity and the related inquiry of whether Hovis has alleged a constitutional violation by Defendant Long.  County Defendants argue that Hovis "has not alleged that Defendant Long violated a clearly established constitutional right.  On the contrary, prosecuting Plaintiff's civil commitment hearing is squarely within Defendant Long's job responsibilities as the solicitor of Lebanon County."  (Doc. 21, p. 11.)  Hovis responds that "[c]learly, the civil commitment violated Plaintiff's constitutional rights, both the Fourth and Fourteenth Amendments[,]" and Long's conduct caused the violations because he engaged in activities "which resulted in both the seizure and subsequent detention." (Doc. 27, pp. 7, 8.)  County Defendants reply that Hovis has failed to point to any case law where similar conduct was found to be a constitutional violation as well and reiterates that "Defendant Long was merely performing his responsibilities as an assistant solicitor for Lebanon County and followed the statutory procedure for involuntary commitments."  (Doc. 31, p. 11.)

The doctrine of qualified immunity recognizes that despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would

have known.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).  The doctrine "protects all but the plainly incompetent or those who knowingly violate the law."  *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Courts follow a two-pronged test to determine whether qualified immunity applies. *Pearson*, 555 U.S. at 232.  First, the court must determine whether the defendants violated the plaintiff's statutory or constitutional right.  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Second, the court must determine whether the right at issue was clearly established at the time of the violation.  *Id.* (citing *Reichle*, 566 U.S. at 664).  The court may exercise its discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236. Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies.  *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).  Finally, because "the 'driving force' behind the creation of the qualified

immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery[,]" the Supreme court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 231–32.

Thus, the first step is to determine whether Defendant Long violated Hovis' statutory or constitutional right. Here, it is unclear from the pleadings what constitutional right Defendant Long has allegedly violated. While the amended complaint generally alleges that Hovis' Fourth and Fourteenth Amendment rights were violated, the portion of the amended complaint relating to Defendant Long, Count III, does not specifically state which constitutional rights were violated by Defendant Long. Rather, the amended complaint states that Defendant Long investigated Hovis' mental health and provided legal advice and assistance to Dr. Qasim in executing the § 303 petition "in order to validate and give apparent legitimacy to the wrongful actions of PSP Troopers initiating the unlawful search and seizure of Plaintiff and his gun and to preclude Gregory Hovis from gun ownership." (Doc. 19, ¶ 63.) The amended complaint further alleges that Hovis was "emotionally and financially harmed by having to go through the needless litigation and endure wrongful civil commitment." (*Id.* ¶ 64.)

These statements do not establish that Defendant Long deprived Hovis of his right to be free from unreasonable search and seizure under the Fourth Amendment

or his right to due process of law under the Fourteenth Amendment. For example, the allegations above do not show that the extension of Hovis' involuntary commitment under § 303 is unreasonable or Defendant Long's participation in that unreasonableness, as would be required under the Fourth Amendment. *See Doby v. DeCrescenzo*, 171 F.3d 858, 827 (3d Cir. 1999) (holding that the "special need" exception to the Fourth Amendment's warrant requirement applies to the MHPA, but a court "nevertheless must examine whether the procedures followed by the county are reasonable under the circumstances.") Further, the allegations also do not show that Hovis was deprived of due process of the law when it appears that the §§ 302 and 303 procedures were followed in this case and Hovis received a hearing in front of a hearing officer and review by the Court of Common Pleas. Nor does the amended complaint alleged that Defendant Long's conduct shocks the conscience, as is required under the Fourteenth Amendment. *See Benn*, 371 F.3d at 174. ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.")

Accordingly, Hovis has not adequately alleged that any of his constitutional rights were violated. Because it is not clear to the court what constitutional right Hovis is alleging, the court cannot continue and determine if that right was clearly established at the time of the alleged violation. Therefore, the court will deny

18

without prejudice Defendant Long's motion to dismiss based on qualified

immunity with leave to raise after further pleading and factual development.

### 3.  Failure to State a Section 1983 Claim

County Defendants argue that Hovis has failed to state a claim under § 1983

because Hovis has failed to allege a constitutional violation, repeating much of the

same argument advanced above.  (Doc. 21, pp. 10, 11.)  Hovis responds by

repeating his argument above as well.  (Doc. 27, pp. 7, 8.)

To state a claim under § 1983, a plaintiff must establish "the violation of a

right secured by the Constitution and laws of the United States," and "the alleged

deprivation was committed by a person acting under color of state law."  *Harvey v.*

*Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005).  As just discussed,

Hovis has failed to allege a violation of his constitutional rights.  Accordingly, he

has failed to state a § 1983 claim against Defendant Long and the motion to

dismiss will be granted on these grounds with leave to amend.

### 4.  Failure to State a *Monell* Claim

Finally, County Defendants argue that Hovis has failed to state a *Monell*

claim against Defendant Lebanon County because he has failed to state a

constitutional violation and has also failed to point to a specific policy of Lebanon

County that caused a constitutional violation.  (Doc. 21, pp. 14–17.)  Hovis argues

that he has stated a constitutional violation, and he has alleged that "the policies

19

and/or customs of the County for handling searches/seizures and civil commitments, including those used by the County's prosecutors, violated the constitutional rights of Plaintiff." (Doc. 27, p. 12.) Hovis argues that it is not necessary to name a specific policy because he has "identified the area in which these customs and policies created unlawful searches and seizures, particularly psychiatric evaluations and commitments and how these policies and customs were put in place by Defendant County's employees, notably Defendant Long." (Doc. 27, p. 14.)

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

A policy or custom can be proven in multiple ways. A plaintiff may point to "a formal policy officially promulgated or endorsed by the municipality . . . ." *Id.*

at 351.  The policy must be "an official proclamation, policy or edict" made by "a decisionmaker possessing final authority to establish municipal policy with respect to the action[.]"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d. Cir. 2019).  Absent a formal policy, the plaintiff may allege a municipality's custom, which is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a policymaker must have been aware[,]" caused the violation of their rights.  *Id.* (*see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990)).  The custom must be "so well-settled and permanent as virtually to constitute law."  *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

Here, Hovis has not sufficiently pleaded his *Monell* claim because he has only pleaded conclusory statements regarding Lebanon County's policies.  Hovis has not specified any decisionmaker or official who promulgated a policy nor has he described how a custom became so widespread and consistent that it became a policy.  Each allegation regarding Lebanon County is merely a recitation of the elements of a cause of action for a *Monell* claim without factual support, rendering it insufficient to state a claim against Lebanon County.  Therefore, County Defendant's motion to dismiss the *Monell* claim will be granted.

In sum, County Defendant's motion to dismiss will be granted in part and denied in part. The claims of Plaintiff's amended complaint which are against

Defendants Long and Lebanon County will be dismissed without prejudice. Because amendment at this point is not futile, Hovis will be given leave to amend his complaint. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

### B. Dr. Qasim's Motion to Dismiss

The court now turns to Dr. Qasim's motion to dismiss, or in the alternative, motion for summary judgment. At this juncture, the court notes that the motion is presented in the alternative, either a motion to dismiss or a motion for summary judgment, and Dr. Qasim has also presented additional evidence that is not apparent from the face of the pleadings. Federal Rule of Civil Procedure 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d). Defendant Dr. Qasim has presented video interviews of Hovis and his wife and Hovis' medical records from March 2, 2022, as well as the transcript from the § 303 hearing and the §§ 302 and 303 petitions.

"Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss." *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 559–60 (3d Cir. 2002). Because the motion can be

resolved under a 12(b)(6) standard, the court will not consider this evidence at this time, but rather, will decide this motion as a 12(b)(6) motion on the face of the pleadings.  Accordingly, because the court is not treating the instant motion as a motion for summary judgment, Hovis' motion for relief from summary judgment under 56(d) is denied as moot.  (Doc. 29.)

Dr. Qasim argues that he is entitled to absolute immunity as a witness in the involuntary commitment hearing, Hovis has failed to state a claim because Dr. Qasim did not act under color of state law, and Dr. Qasim is entitled to qualified immunity because he did not violate a clearly established constitutional right. (Doc. 24, pp. 10–18.)  Dr. Qasim also argues he is entitled to immunity under the MHPA.  (*Id.* at 22, 23.)  Hovis argues he has pleaded his cause of action in such a way that Dr. Qasim is not entitled to absolute or qualified immunity, he pleaded sufficient facts showing Dr. Qasim acted under color of state law, and Dr. Qasim is not entitled to immunity under the MHPA.  (Doc. 28.)  The court will address each argument in turn.

### 1. Absolute Immunity

Dr. Qasim first argues he is entitled to absolute immunity as a witness in the involuntary commitment hearing, pursuant to *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992).  (Doc. 24, p. 15.)  Hovis argues that the amended complaint does not challenge Dr. Qasim's participation in the involuntary commitment

hearing, rather, "Plaintiff alleged that Qasim knew he did not need treatment yet advocated for his involuntary commitment under 302 and continued involuntary commitment under 303 by signing papers requesting such commitment and holding Plaintiff while involuntarily committed." (Doc. 28, pp. 7, 8.) Dr. Qasim replies that the amended complaint "focused on Dr. Qasim's testimony at the 303 hearing." (Doc. 33, p. 11.)

Dr. Qasim is correct that, according to *McArdle v. Tronetti*, a witness testifying at an involuntary commitment hearing is entitled to absolute immunity with respect to their testimony at that hearing, even if that testimony is perjured. 961 F.2d at1085. However, the court agrees with Hovis that the challenged conduct in the amended complaint is not Dr. Qasim's testimony at the hearing, but rather Dr. Qasim's participation in evaluating Hovis and filing the § 303 petition. Paragraph 86 of the amended complaint specifically alleges: "Dr. Qasim knew and admitted prior to and during his efforts to obtain a § 303 extended voluntary commitment order that Plaintiff did not represent a threat to himself or others, but Dr. Qasim, at the behest of Solicitor Long, nonetheless sought an improper and unlawful involuntary commitment extension." (Doc. 19, ¶ 86.) While Dr. Qasim's participation in the involuntary commitment hearing is discussed earlier in the amended complaint, the count against Dr. Qasim only includes allegations regarding his conduct in petitioning to extend Hovis' involuntary commitment.

24

Further, *McArdle* also held that "defendants are not protected by either witness or judicial immunity with respect to the allegations that they were responsible for filing a petition for involuntary commitment which they knew contained lies." *McArdle*, 961 F.2d at 1086. The *McArdle* court found that the conduct of filing an involuntary commitment petition is not protected by absolute immunity because filing a petition is "neither [functioning] as a witness nor as an arm of the court; the petition [is] not the equivalent of testimony offered in court or a written report made at a court's discretion." *Id.* Thus, under *McArdle*, Dr. Qasim's alleged conduct here of filing a § 303 petition despite knowing that Hovis did not represent a threat to himself or others, essentially, falsely completing a § 303 petition, is not entitled to absolute immunity. The motion to dismiss will be denied on this basis.

### 2. Acting Under Color of State Law

Dr. Qasim next argues that he did not act under color of state law, as required for a § 1983 claim, because he is private individual whose "mere participation in a civil commitment proceeding under the Pennsylvania Mental Health Procedures Act does not convert them into state actors for purposes of § 1983 liability." (Doc. 24, p. 17.) Dr. Qasim relies on *Janicsko v. Pellman*, 774 F. Supp. 331, 339 (M.D. Pa. 1991), in which the court determined that "the involuntary commitment of the mentally ill by private physicians and hospitals"

pursuant to the MHPA was not state action because it is not "a function compelled by or sufficiently connected to state directives to attribute those actions to the state." *Id.*

Hovis replies that Dr. Qasim is a state actor because his employer, WellSpan Philhaven, is a contractor with Lebanon County and "[w]here, as here, a defendant is employed by a contractor hired to provide medical/mental health services to law enforcement, the contractor and its employees can become state actors for purposes of liability under § 1983." (Doc. 28, p. 5.) Hovis cites to cases that held employees of prison contractors who provide medical services to prisoners were state actors. (*Id.* at 5, 6.) Hovis concludes that "because Plaintiff averred that Qasim was employed by a contractor hired by law enforcement to provide medical (mental health) services to Plaintiff and did provide those services, Plaintiff averred sufficient facts to state a § 1983 claim against Qasim for a violation of Plaintiff's constitutional rights[.]" (*Id.* at 6.)

Dr. Qasim replies by distinguishing the case law relied upon by Hovis because it considers defendants who contracted with prisons in the context of the Eighth Amendment and implores the court "instead look to the body of caselaw developed regarding the type of claim that Hovis asserts–*i.e.* a claim against a physician alleging improper civil commitment under the Fourteenth Amendment." (Doc. 33, p. 8.)

As previously explained, stating a claim under § 1983 requires that a plaintiff establish "the violation of a right secured by the Constitution and laws of the United States," and "the alleged deprivation was committed by a person acting under color of state law." *Harvey*, 421 F.3d at 189. In order for the deprivation of a constitutional right to be committed by a person acting under the color of state law, "the complained of action . . . must be one that is 'fairly attributable to the state,' and not to some private actor." *Janicsko*, 774 F. Supp. at 335 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

As explained by the Third Circuit, the Supreme Court has developed three different tests to assess whether a private person's or entity's action can be attributable to the state. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). First, there is the "public function" test, which asks "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state[.]" *Id.* Second, there is the "close nexus" test, which asks "whether the private party has acted with the help of or in concert with state officials[.]" *Id.* Third and finally, there is the "symbiotic relationship" test, which asks whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.*

At the outset, the court discounts the argument advanced by Hovis that Dr. Qasim is a state actor simply because he was employed by an entity who contracts

with Lebanon County.  The Third Circuit has held that "[a]cts of private

contractors do not become acts of the State simply because they are performing

public contracts."  *Kach*, 589 F.3d at 648.  Rather, there must be more than just the

fact of a contractual relationship, such as the nature of the activity performed by

the contractor has traditionally been the prerogative of the state, or the state has

exercised "coercive power or has provided significant encouragement, either overt

or covert, that the choice must in law be deemed that of the State."  *Id.*; *see also*

*Black by Black v. Indiana Area School Dist.*, 985 F.2d 707, 710 (3d Cir. 1993).

The cases cited by Hovis all arise from the context of an Eighth Amendment

violation raised by a prisoner.[11]  In the prison context, the Supreme Court has

previously held that medical providers contracted by the state to provide medical

services to prisons are state actors because the physicians were "authorized and

---

[11] The court notes that every case cited by Hovis is in the prison medical care context, and in each case, the applicable Defendant conceded that it was a state actor.  No case provides any analysis of the issue currently before the court.  *See Neuen v. PrimeCare Medical, Inc.*, No. 09-cv-5090, 2011 WL 1104118 at * 8 (E.D. Pa. March 24, 2011) ("Private entities that contract with municipalities to provide services to prison inmates, as well as employees of those entities, are acting 'under color of state law.'  Indeed, Defendants concede that they were acting under color of state law."); *Coyle v. Montgomery Cnty, Pa.*, No. 21-4704, 2023 WL 2576843, at * 11 (E.D. Pa. March 20, 2023) ("PrimeCare appears to concede that it provides medical services for inmates at MCCF and, as such, acts under color of state law for purposes of section 1983.  Even if it did not, the court would conclude that it is a state actor for purposes of section 1983."); *Roth v. PrimeCare*, No. 18-5010, 2019 WL 2745789, at * 2 fn.12 (E.D. Pa. June 27, 2019) ("The PrimeCare Defendants do not contest that they are state actors, conceding they contract with Montgomery County to provide medial services to inmates incarcerated at the Montgomery County Prison."); *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) ("It is undisputed that PHS [contractor with county prison] was acting under color of state law when it provided medical services to Daniel Natale[.]")

obligated to treat prison inmates" and were "clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 54 (1988) (citations omitted). The physicians were "clothed in the authority of state law" because "[i]t is only those physicians authorized by the State to whom the inmate may turn. Under state law, the only medical care [a prisoner can] receive for his injury was that provided by the State." *Id.* at 55.

Although it was true in *West* that the physicians were employed by contractors with the state, this fact alone did not resolve the issue. The Supreme Court held that "[w]hether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner." *Id.* at 56. Thus, contracted physicians in a prison were state actors because "[t]he State bore an affirmative obligation to provide medical care to [prisoner]; the State delegated that function to respondent [physician]; and respondent voluntarily assumed that obligation by contract." *Id.* Therefore, the fact that Dr. Qasim is employed by a contractor with the County does not resolve this issue.

However, the issue is also not as simple as Dr. Qasim would like it to be. The Third Circuit has certainly held that "persons who petition for the involuntary commitment of others are not state actors[]" simply because they are acting pursuant to the MHPA. *Benn v. Univ. Health Systems, Inc.*, 371 F.3d 165, 173 (3d

Cir. 2004.)  However, the present case is not on all fours with *Benn* and other cases that analyzed whether a private entity is a state actor by virtue of complying with the MHPA.  *See Benn*, 371 F.3d at 173 (finding that "persons who petition for the involuntary commitment of others are not state actors); *see also Janicsko*, 774 F. Supp. at 339 ("[T]his court cannot say that the involuntary commitment of the mentally ill by private physicians and hospitals is, under the MHPA, a function compelled or sufficiently connected to state directives to attribute those actions to the state."); *Bodor v. Horsham Clinic*, No. 94-7210, 1995 WL 424906, at **4–9 (E.D. Pa. July 19, 1995) (finding that private clinic was not a state actor when acting pursuant to MHPA under close nexus test, government compulsion test, or public function test).  Here, Dr. Qasim is employed by a contractor with the County, and that is a relevant consideration, though not dispositive standing alone.

Some courts in this circuit have found that a hospital that contracts with a county to treat involuntarily committed patients is a state actor for § 1983 purposes.  *Schorr v. Borough of Lemoyne*, 265 F.Supp.2d 488, 495 (M.D. Pa. 2003).  In *Schorr*, decided at the summary judgment stage, the court looked to many factors in ultimately deciding that the hospital that contracted to examine involuntarily committed patients had a sufficiently close nexus to the state and should be considered a state actor, including facts such as: the county required that the hospital provide crisis intervention services mandated by statute, a county

30

delegate "handle all section 302 commitments," and the hospital have a grievance

procedure for these types of commitments. *Id.* Further, there was "daily

involvement and oversight of the county such that it ha[d] influence over the

policies of the Crisis Intervention program[run by the hospital.]" *Id.* Additionally,

the challenged conduct also showed a close nexus because "[t]he hospital

coordinated the execution of the § 302 warrant, [which was] carried out by

policemen, and a county representative was involved throughout the commitment

process, as required by the contract." *Id.* at 496. Based on these connections, the

court determined that the hospital was "authorized and obligated to treat confined

mentally disable persons" and did so "clothed with the authority of state law." *Id.*

at 496.

On the other hand, courts have found that hospitals with state contracts to

treat involuntarily committed patients are not state actors merely by virtue of

having a contract with the state. *See Smith v. Pennsylvania*, 21-5473, 2022 WL

3139854, at *9 (E.D. Pa. Aug. 4, 2022) (finding plaintiff failed to allege private

hospital contractor was a state actor when plaintiff alleged only that hospital

evaluated her and discharged her.); *Manley v. Horsham Clinic*, No. 00-4904, 2001

WL 894230, at * 5 (E.D. Pa. Aug. 9, 2001) (holding that clinic with contract with

state for treating § 302 patients was not a state actor by virtue of contract alone

because "nothing in plaintiff's allegations . . . suggest that this contract expanded

the level of state involvement with the Clinic beyond its obligations under the MHPA.")

Here, Hovis has only pleaded that WellSpan is a contractor with Lebanon County. This is insufficient, on its own, to show that WellSpan is so closely intertwined with a state actor as to be acting on behalf of the state or in concert with state officials, that it is performing a public function traditionally the exclusive prerogative of the state, or that WellSpan is in a symbiotic relationship with the state because of interdependence between WellSpan and the state. Accordingly, Hovis has failed to show that Dr. Qasim was acting as a state actor at the time of Dr. Qasim's participation in Hovis' involuntary commitment. Thus, the motion to dismiss will be granted and count V against Dr. Qasim will be dismissed. Hovis will be granted leave to amend because amendment would not be futile, as there could be facts which state a claim against Dr. Qasim. *Fletcher-Harlee Corp.*, 482 F.3d at 252.

Because the court holds that Hovis has failed to state a claim under § 1983, the court will not determine whether Dr. Qasim is entitled to qualified immunity.

### 3. MHPA Immunity

Finally, the court turns to Hovis' state law claim against Dr. Qasim for aiding and abetting. Regarding this claim, Dr. Qasim argues he is entitled to immunity provided by the MHPA. 50 P.S. § 7114(a). Dr. Qasim argues he is

entitled to immunity because the aiding and abetting claim "appears to take issue with Dr. Qasim's role in the decision for Hovis to be required to undergo additional inpatient treatment authorized by the PMHPA." (*Id.* at 23.) Dr. Qasim also argues that Hovis cannot support a claim against Dr. Qasim challenging whether there was probable cause because the evidence submitted by Dr. Qasim allegedly establishes "ample probable cause supported Dr. Qasim's recommendation." (*Id.*)

Hovis replies that Dr. Qasim is not entitled to immunity under the MHPA because the MHPA only provides immunity for "providing mental health treatment to a mentally ill person[,]" and Hovis contests the fact that he was mentally ill. (Doc. 28, pp. 11, 12.) Hovis further argues that it is unclear what treatment Dr. Qasim provided, which is "sufficient to raise doubt that PMHPA immunity exists." (*Id.* at 12.) Finally, Hovis argues that he has averred sufficient facts "to create an inference that Qasim engaged in gross negligence, which is outside the immunity afforded by the PMPHA [sic] and is a jury question." (*Id.*)

In reply to Hovis' argument that he was not mentally ill, Dr. Qasim argues that "[t]he 303 petition and the transcript from the 303 hearing . . . makes clear that Dr. Qasim had examined Hovis and found him to be mentally disabled." (Doc. 33, p. 17.) The court reiterates that it is deciding this issue under a motion to dismiss standard and is not considering the evidence presented by Dr. Qasim at this point.

The MHPA provides civil and criminal immunity to those individuals, including physicians, who participate[] in a decision that a person be examined or treated under this act[.]" 50 P. S. § 7114.  This immunity extends to decisions under the act as well as any of the consequences of those decisions.  *Id.*  The immunity is limited because it only applies "[i]n the absence of willful misconduct or gross negligence[.]"  *Id.*

By the text of the statute, § 7114 immunity applies to a decision made under the statute.  As the Pennsylvania Supreme Court has held, "[i]t is only when a physician files the required documentation for involuntary emergency examination that he becomes a participant in the decision-making process under the Act." *Leight v. Univ. of Pittsburgh Physicians*, 243 A.3d 126, 141 (Pa. 2020).  Hovis was involuntarily committed pursuant to the MHPA and Dr. Qasim evaluated him pursuant to the MHPA.  Per the allegations of the amended complaint, Dr. Qasim submitted a § 303 petition.  (Doc. 19, ¶¶ 37, 86, 91, 92.)  Therefore, this provision applies to Dr. Qasim's conduct of filing a § 303 petition, whether or not Hovis considers himself mentally ill.

Because the immunity provision could apply to Dr. Qasim's decision to file a § 303 petition, the next question is whether Hovis has adequately alleged gross negligence or willful misconduct, such that Dr. Qasim's conduct would not be entitled to immunity.  "Under Pennsylvania law, 'gross negligence' is 'more

egregiously deviant conduct than ordinary carelessness, inadvertence, laxity or indifference.' Rather, gross negligence requires conduct that is "flagrant, grossly deviating from the ordinary standard of care." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 175 (3d Cir. 2004) (quoting *Albright v. Abington Memorial Hospital,* 696 A.2d 1159, 1164 (Pa. 1997)).  Further, "'[w]illful misconduct' occurs when 'the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.'"  *Id.* at 175–76.

Although the allegations are vague and conclusory, taking the allegations of Hovis' amended complaint as true, Hovis has plausibly alleged that Dr. Qasim engaged in gross negligence or willful misconduct due to Dr. Qasim filing a § 303 petition despite knowing that Hovis did not meet statutory requirements to do so. (Doc. 18, ¶¶ 39, 91.)  Under a motion to dismiss standard, it is not sufficiently clear to the court that MHPA immunity applies to Dr. Qasim.  Therefore, considering the complaint under a motion to dismiss standard, the motion to dismiss will be denied without prejudice.  Dr. Qasim has leave to raise this issue again after further development of the record and under a summary judgment standard.

CONCLUSION

County Defendant's motion to dismiss is granted in part and denied in part.

Dr. Qasim's motion to dismiss is granted in part and denied in part.  Hovis' motion

for relief from summary judgment is denied as moot.  Counts III, IV, and V of the

amended complaint are dismissed without prejudice and with leave to amend.  An

Order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania