## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY HOVIS, | : | Civil No. 1:24-CV-00355 |
| Plaintiff, | : | |
| v. | : | |
| COUNTY OF LEBANON, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is the motion to dismiss filed by one group of defendants in this case, Defendants Thomas Long ("Long") and County of Lebanon ("County"). (Doc. 44.) Defendants Long and County seek to dismiss the second amended complaint filed by Plaintiff Gregory Hovis ("Hovis") which, with respect to Defendants Long and County, alleges that Hovis was denied due process during his involuntarily civil commitment as a result of Defendant Long's investigation, legal advice, and dereliction of his responsibilities as a minister of justice in the context of the civil commitment. (Doc. 42.) For the reasons that follow, the motion will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the second amended complaint, Hovis alleges that on March 1, 2022, Hovis was speaking with his wife in his home "in hopes of reconciling their marriage." (Doc. 42, ¶ 20.) This conversation, however, was not in good faith

1

because "rather than actually attempting to reconcile the marriage, Plaintiff's wife and her brother had concocted a plan whereby she would send a text message to him [her brother] and he would alert the police to a 'dangerous situation' in hopes that they would arrive and either arrest or kill Plaintiff." (*Id.* ¶ 21.) Hovis' wife sent the message and Troopers were dispatched to the house. (*Id.* ¶¶ 22, 23.) Upon arrival, the Troopers found Hovis' wife already outside of the home and then observed Hovis leave his home "without incident." (*Id.* ¶ 24.) At this time, Hovis was "lawfully carrying a handgun in his back pocket[,]" and he "made no furtive movements or gave any indication he intended to harm (or had harmed) himself or anyone else." (*Id.* ¶¶ 25, 26.) The Troopers gave commands to Hovis, and he attempted to comply. (*Id.* ¶ 27.)

However, at this time, the Troopers "physically assaulted Plaintiff, took him to the ground, handcuffed him, and secured him in the back of a State Police patrol vehicle." (*Id.* ¶ 28.) Hovis' hands were restrained, and the Troopers searched his person and seized his handgun. (*Id.* ¶¶ 29, 31.) Hovis "became distraught by the interaction and subsequent arrest." (*Id.* ¶ 30.) Hovis was then "transported to Gettysburg Hospital, against his will, for initial evaluation and then taken to

WellSpan Philhaven Hospital where he was involuntarily committed under § 302 of the Mental Health Procedures Act of Pennsylvania."[1] (*Id.*¶ 32.)

After Plaintiff was transported to WellSpan Philhaven in Lebanon County, Pennsylvania, Defendant Thomas S. Long ("Long"), the Lebanon County Solicitor, "investigated Plaintiff's mental [h]ealth." (*Id.* ¶ 33.) Allegedly, "Plaintiff did not have an ongoing mental health issue and the video of the incident would have demonstrated to Long that Plaintiff did not need to be committed." (*Id.* ¶ 34.) At this time, "Long provided advice to Dr. Qasim[2] about extending the civil commitment of Plaintiff and was involved in the petition documents signed by Dr. Qasim in support of the § 303 extension."[3] (*Id.* ¶ 37.)

---

[1] The Pennsylvania Mental Health Procedures Act ("MHPA") provides for involuntary emergency examination and treatment for a period not to exceed 120 hours "upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination." 50 P.S. § 7302. This procedure and section of the MHPA will be referred to in this memorandum as "§ 302."

[2] Dr. Qasim is a licensed physician who is employed at WellSpan Philhaven and "was the doctor charged with evaluating and signing a verified charge against Plaintiff for Defendant County of Lebanon." (Doc. 42, ¶ 14.)

[3] The MHPA provides that "[a]n application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." 50 P.S. § 7303. This application is commonly known as a "§ 303" application or petition. After a § 303 petition is filed, a person subject to the petition is entitled to the appointment of counsel and review by a judge or mental health review officer. *Id.* § 7303(c). There is also a right to petition the Pennsylvania Court of Common Pleas for review. *Id.* § 7303(g). The extended involuntary commitment shall end "[w]henever a person is no longer severely mentally disabled or in need of immediate treatment" or after twenty days, unless the person is admitted to voluntary treatment, or a court extends the involuntary treatment pursuant to section 304. *Id.* § 7303(h).

Hovis had a hearing in front of a mental health review hearing officer on March 4, 2022. (*Id.*) At the hearing, Defendant Long represented Lebanon County and "prosecuted the civil commitment action against Plaintiff." (*Id.* ¶ 38.) During the hearing:

> Long relied on (a) hearsay testimony[4] by Trooper Careiro [sic] which was inconsistent with video evidence possessed by Pennsylvania State Police and, on information and belief, Long and Lebanon County, and (b) testimony by Samir Qasim who, despite admitting Plaintiff did not presently pose a threat to himself or others, forcefully advocated for continued detention of Plaintiff through extended involuntary commitment pursuant to §303 of the Mental Health Procedures Act of Pennsylvania.

(*Id.* ¶ 39.) The hearing officer found that further involuntary commitment was warranted "despite complete lack of evidence[.]" (*Id.* ¶ 40.) Hovis was "released" after an unknown amount of time following his filing a petition for review with the Court of Common Pleas. (*Id.* ¶ 42.) Hovis alleges that "at the hearing before [Court of Common Pleas Court] Judge Kline, [Long] made clear that this was 'all about gun' and sought only to justify the conduct of the County and Dr. Qasim rather than to ensure the rights of Hovis[.]" (*Id.* ¶ 66.)

Relevant to Defendant Long, the second amended complaint contains one count for violation of 42 U.S.C. § 1983. (*Id.* ¶¶ 61–72.) The count alleges that

---

[4] The court notes that, in a hearing pursuant to § 303, "[t]he judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable." 50 P.S. § 7303(c).

4

Long "unreasonably and improperly investigated" Hovis' mental health prior to "the establishment of any need for civil commitment[,]" and Long gave "improper legal advice to Dr. Qasim and the facility" to "validate and give apparent legitimacy to the wrongful actions of the PSP Troopers[.]" (*Id.* ¶ 63.) Hovis also alleges that during his investigation, Long learned that "Hovis was not perceived to be a threat to himself or others, but additional detention was only considered to provide Defendant Qasim more time." (*Id.* ¶ 64.) Hovis alleges he was denied due process "because of [Long's] dereliction of Pa. R. Prof. Conduct 3.8 and [Long's] responsibilities thereunder, specifically in his essential role of minister of justice." (*Id.* ¶ 65.) Hovis alleges that "the failed and faulty investigation by Defendant Long and improper legal advice by Defendant Long to Defendant Qasim constitute unreasonable procedures for evaluating whether a § 303 commitment should be pursued." (*Id.* ¶ 67.) Hovis alleges that the procedural safeguards included in the MHPA "are part and parcel to the due process protections afforded such individuals such that probable cause should exist before such commitments are pursued." (*Id.* ¶ 68.)

Hovis alleges he was emotionally and financially harmed and lost his ability to possess firearms as a result of the civil commitment. (*Id.* ¶ 69.) Hovis alleges this harm was the direct and proximate result of Long's improper investigation and

legal advice, and the purpose of Long's actions was to "legitimize an unlawful search and seizure of Plaintiff and his gun." (*Id.* ¶ 70.)

Hovis filed his initial complaint in the instant case on February 29, 2024. (Doc. 1.) After limited discovery approved by the court, Hovis filed an amended complaint on June 24, 2024. (Doc. 19.) The amended complaint raised § 1983 claims against the PSP Troopers who encountered Hovis at his home and drove him to the hospital, Defendant Long, Dr. Qasim, and Defendant County. (*Id.*) The Trooper Defendants answered the amended complaint on July 9, 2024. (Doc. 25.) Defendants Long and County filed a motion to dismiss on July 3, 2024. (Doc. 20.) Dr. Qasim filed a separate motion to dismiss, or in the alternative, for summary judgment on July 8, 2024. (Doc. 22.) After the motions were fully briefed, the court granted in part and denied in part each motion. (Doc. 41.) Ultimately, the court dismissed counts III, IV, and V without prejudice and with leave to amend. (*Id.*) Regarding the Fourteenth Amendment Due Process claim against Defendant Long, the court held that Defendant Long was entitled to absolute immunity for any actions he took in assisting Dr. Qasim in executing the § 303 petition. (Doc. 40, p. 14.) The court deferred consideration of whether Long was entitled to absolute immunity regarding investigative activities or providing legal advice because the amended complaint did not provide sufficient factual detail to reach that conclusion. (*Id.* at 13, 14.) The court also denied Long's motion based on

qualified immunity because it was not clear what specific right Hovis alleged Long violated.  (*Id.* at 18, 19.)

Hovis then filed a second amended complaint on November 20, 2024.  (Doc. 42.)  The second amended complaint is substantially the same as the first amended complaint, except it does not contain any claims against Defendant County, despite including County in the caption.  (*Id.*)  The PSP Defendants answered the second amended complaint on December 4, 2024.  (Doc. 46.)  Defendants Long and County filed a motion to dismiss the second amended complaint on December 4, 2024.  (Doc. 44.)  Dr. Qasim filed a motion to dismiss the second amended complaint on December 4, 2024.  (Doc. 43.)  Defendants Long and County's motion to dismiss is fully briefed and ripe for disposition.  (Docs. 49, 50.)  While Dr. Qasim's motion to dismiss was pending, Hovis and Dr. Qasim filed a stipulation of dismissal as to Dr. Qasim and Dr. Qasim's motion to dismiss was denied as moot.  (Docs. 54, 55.)  Accordingly, the only pending motion in this case at this time is the motion filed by Defendants Long and County.  (Doc. 44.)

### JURISDICTION AND VENUE

The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Hovis alleges violations of his constitutional rights under 42 U.S.C. § 1983.  Venue is appropriate pursuant to 28 U.S.C. § 1391 because all parties are

located within the Middle District of Pennsylvania and all events alleged in the complaint occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**DISCUSSION**

The court will first address arguments made by Defendant Long and then discuss arguments made by Defendant County.

**A. Defendant Long**

Long argues that the second amended complaint fails to state a claim as a matter of law because it does not sufficiently allege either a procedural or substantive due process claim under the Fourteenth Amendment. (Doc. 45, pp. 5–9.) First, Long argues the second amended complaint fails to state a procedural due process claim because the Third Circuit has "held that the involuntary commitment procedures set forth in the Pennsylvania Mental Health Procedures Act do not violate an individual's procedural due process rights[,]" and because Long "complied with the procedural requirements of the MHPA, Plaintiff's procedural due process rights have not been violated as matter of law." (*Id.* at 6.) Second, Long argues the second amended complaint fails to state a substantive due process claim because the second amended complaint provides only legal conclusions as to whether Long's conduct shocked the conscience. (*Id.* at 7, 8.)

Hovis responds that his Fourteenth Amendment rights were "violated at the moment Defendant Long improperly investigated the mental health of Plaintiff and provided improper legal advice to Defendant Qasim prior to institution of the hearings for extended commitment of Plaintiff." (Doc. 49, p. 2.) Hovis argues he

9

has alleged that "as part of his due process rights, [he] is entitled to proper investigation by the prosecutor prior to the initiation of the action for compulsory involuntary commitment." (*Id.*)  Hovis argues the right to proper investigation is supported by a prosecutor's obligations contained in the Pennsylvania Rules of Professional Conduct and discussed in case law.  (*Id.* at 2, 3.)  Hovis contends that Long "had a duty to properly investigate the claims against Hovis before considering pursuit of an extended civil commitment as a minister of justice, similar if not equivalent to a criminal prosecutor, which is clearly established." (*Id.* at 3.)  Hovis then cites to cases which "focus on the prosecution's duty to discover favorable information." (*Id.* at 4.)  Ultimately, Hovis argues this case law leads to the conclusion that:

> While there may be a difference between due process rights violations which result in a wrongful conviction and those that result in a prosecutor being civilly liable, one thing is clear: the case law puts forth the notion that such violations (even in criminal prosecutorial actions during trial –which are granted immunity from civil suit) give notice of constitutional rights and the injury incurred therefrom.  In this case we are concerned with prosecutorial misconduct before the actions closely associated with prosecution and trial–and are concerned with investigative misconduct which itself has been shown to be (1) a constitutional violation and (2) civilly actionable by the Plaintiff.

(*Id.* at 6.)  Based on this, Hovis argues the second amended complaint states a claim for a Fourteenth Amendment violation because it challenges "Long's conduct in performing administrative and/or investigative functions[.]" (*Id.* at 6, 7.)

10

In reply, Defendants argue that Hovis' "procedural due process arguments premised on the *Brady* and *Napue* doctrine are barred pursuant to judicial estoppel" because these arguments are "fundamentally at odds with his representation that he is not challenging Defendant Long's conduct during the Section 303 hearing because *Brady* and *Napue* necessarily implicate a prosecutor's conduct in relation to a judicial proceeding[.]"  (Doc. 50, p. 4.)[5]

Defendants also argue that Hovis does not mention "substantive due process or its elements[,]" and the theories of liability presented by Hovis are not cognizable under the Fourteenth Amendment.  (*Id.* at 7, 8.)  Defendants note that "allegations relating to Defendant Long's investigation of Plaintiff are insufficient to state a substantive due process claim[ ]" because the Third Circuit has "expressed 'significant doubts about whether there is an independent substantive due process right to be free from a reckless investigation.'"  (*Id.* at 8) (quoting *Johnson v. Logan*, 721 Fed. App'x. 205, 208 (3d Cir. 2018)).[6]  Additionally,

---

[5] Defendants also argue that "even if Plaintiff is not judicially estopped from asserting these arguments, said arguments are insufficient as a matter of law[ ]" because Long has absolute immunity " 'from claims based on [his] failure to disclose exculpatory evidence, so long as [he] did so while functioning in their prosecutorial capacity.'"  (Doc. 50, p. 6)(quoting *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006)).

[6] Defendants also note that Hovis has failed to set forth a Fourth Amendment malicious prosecution claim as well because "it is undisputed that the proceeding did not end in Plaintiff's favor, as the hearing officer found that further involuntary commitment was warranted."  (Doc. 40, p. 11.)  One element of a malicious prosecution claim is the criminal proceeding ending in Plaintiff's favor.  *Thompson v. Clark*, 596 U.S. 36, 44 (2022)("[A] Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him.")

Defendants argue that "Plaintiff has set forth no argument in support of the notion that providing legal advice to Dr. Qasim constitutes a substantive due process claim." (*Id.* at 11, 12.)

Hovis has failed to state a substantive due process claim against Defendant Long.[7] Preliminarily, Hovis' contention that *Brady* applies to this situation is without merit. Hovis has not cited any case for the proposition that there are *Brady*-type obligations attached to a MHPA proceeding. Further, even if there were, as noted by Long, the Third Circuit has "never recognized an independent due process right to be free from a reckless investigation." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020). Additionally, "even if such a claim were cognizable, it 'could only arise under the Fourth Amendment.'" *Id.* (quoting *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018)). Accordingly, Hovis' claim of improper investigation does not make out a substantive due process claim.

Similarly, Hovis' allegation that Long gave improper advice to Dr. Qasim also fails to state a substantive due process claim. The only allegation regarding this action is in paragraph 64, which states that Long "learned during his

---

[7] Hovis has also failed to assert a procedural due process claim because the Third Circuit has held that "in an emergency situation, a short-term commitment without a hearing does not violate procedural due process." *Benn v. Univ. Health. Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004). The Third Circuit has also held that even if a defendant violated the MHPA, that is insufficient to state a § 1983 claim. *Id.* Here, there are no allegations that the provisions of the MHPA were not followed during Hovis' involuntary commitment. Accordingly, Hovis has failed to state a claim for a procedural due process violation.

12

investigation that [Plaintiff] Hovis was not perceived to be a threat to himself or others, but additional detention was only considered to provide Defendant Qasim more time." (Doc. 42, ¶ 64.) This vague allegation provides no detail as to what information Long actually learned during his investigation, from what source, or whether this information was reliable.

In any event, Hovis has not shown that Long had an obligation to advise Dr. Qasim as to Hovis' mental state at all. Hovis' reliance on Pennsylvania Rule of Professional Conduct 3.8 is unavailing because it explicitly applies to prosecutors in a criminal proceeding. PA. R. PROF. CONDUCT 3.8. Moreover, the MHPA does not obligate Long to advise Dr. Qasim. A § 303 petition may be made when the facility determines the need for further treatment. 50 P.S. § 7303(a). The statute does not require any input from the person or entity who ultimately represents the government at a hearing. There are similarly no allegations that Defendant Long's advice would have changed Dr. Qasim's mind as to his professional opinion that Hovis needed further treatment. Therefore, because Long had no obligation to advise Dr. Qasim, Long's failure to advise Dr. Qasim that Hovis was not a danger to himself does not shock the conscience. Accordingly, Hovis has failed to state a claim for a substantive due process violation.[8]

---

[8] The court will not address the other issues raised by Defendants' motion, such as judicial estoppel, because Hovis has failed to state a claim for which relief can be granted.

The court will dismiss the claim against Defendant Long with prejudice because amendment is futile. Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). The Supreme Court has held that amendment should be freely given, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). In civil rights cases, "courts must offer amendment irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

Here, the court finds that amendment would be futile. Having filed three complaints so far, Hovis has been unable to state a claim that Long caused a constitutional injury based on the factual circumstances detailed in his complaint. *See O'Donnell v. Simon*, 362 Fed. App'x 300, 305 (3d Cir. 2010) (upholding district court's denial of leave to amend after second failure to assert a

constitutional injury.)  Accordingly, any further amendment would be futile, and Defendant Long will be dismissed from this case with prejudice.[9]

### B. Defendant County of Lebanon

Defendant County argues it should be dismissed with prejudice because Hovis failed to allege any claims against it in the second amended complaint. (Doc. 45, p. 11.).  Hovis argues that County should be dismissed without prejudice because he voluntarily withdrew the claims against County "while still having leave to amend."  (Doc. 49, p. 8.)

Defendant County will be dismissed from this case with prejudice.  Hovis was specifically warned that failure to re-file claims would result in the subject counts being dismissed from the case with prejudice.  (Doc. 41.)  Hovis chose not to allege claims against Defendant Lebanon County in the second amended complaint.  Thus, Lebanon County will be dismissed with prejudice.  *See In re Westinghouse Securities Litigation*, 90 F.3d 696, 703–04 (3d Cir. 1996)(holding it was not an abuse of discretion for a court to dismiss with prejudice claims that were not replead when plaintiff had been warned failure to replead would lead to dismissal with prejudice.)

---

[9] The parties also make arguments regarding qualified immunity.  Because the court finds that Hovis has not alleged a constitutional injury, the court will not analyze whether Defendant Long is entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, the motion to dismiss filed by Defendants Long and Lebanon County is granted. Defendants Long and Lebanon County are dismissed from this case with prejudice. An order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: May 12, 2025